IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LAWRENCE ALEXANDER JR., ELLIS      )
ALLEN, MITCHELL ALSTON, FRANCES R. )
BANKS, AHMED BLAKE, MICHAEL O.     )
BRODIE, KEVIN E. CHANDLER,         )
CHARLES E. CHERRY, ERNEST          )
CUTHBERTSON, DARRIN DAVIS,         )
STEVEN A. EVANS, WILLIAM GRAVES,   )
MILFORD J. HARRIS II, JONATHAN     )
HEARD, ANTUAN HINSON, STEPHEN L.   )
HUNTER, BRIAN JAMES, DEMETRIUS     )
W. JOHNSON, JOHN O. LEGRANDE,      )
GEORGE M. LITTLE, DARRELL          )
MCDONALD, C.L. MELVIN, STACY A.    )
MORTON JR., WILLIE PARKER, LARRY   )
PATTERSON JR., WILLIAM A. PHIFER,  )
JOSEPH PRYOR, NORMAN RANKIN,       )
WAYNE REDFERN, ALEXANDER RICKETTS, )
RONALD ROGERS, STEVEN SNIPES,      )
CALVIN STEVENS JR., ERIC           )
STEVENSON, JERMEIR JACKSON-STROUD, )
JULIUS TUNSTALL, ALLEN WALLACE,    )
FRANK YOUNG and MICHAEL WAYLAND    )
WALL,                              )
                                   )
          Plaintiffs,              )
                                   )
     v.                            )    1:09-CV-934
                                   )
THE CITY OF GREENSBORO,            )
                                   )
          Defendant.               )

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

Before the court is the motion for judgment on the

pleadings of Defendant The City of Greensboro ("the City")

pursuant to Federal Rule of Civil Procedure 12(c).  (Doc. 29.)

Plaintiffs oppose this motion. (Doc. 37.) For the reasons set forth below, the motion will be denied.

## I.   BACKGROUND

Plaintiffs are all African-American/black police officers employed by the City through the Greensboro Police Department ("GPD") when David Wray ("Wray") was promoted to Chief of Police and Gilmer Brady ("Brady") to Deputy Chief. Both Wray and Brady are white.

Plaintiffs commenced this action on December 7, 2009, bringing claims against the City for discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964 (as amended), 42 U.S.C. § 2000e et seq. ("Title VII"), based upon alleged discriminatory actions taken or directed by Wray, Brady, and other nonblack GPD officers.[1]   (Doc. 1.) Plaintiffs filed an Amended Complaint on March 15, 2010. (Doc. 4.) This court's January 4, 2011 Memorandum Opinion and Order contains a detailed summary of the Amended Complaint's factual allegations, which will not be repeated here. See Alexander v. City of Greensboro, No. 1:09-CV-934, 2011 WL 13857, at *1-*3 (M.D.N.C. Jan. 4, 2011).

---

[1]   In a companion action removed to this court on April 17, 2009, Plaintiffs brought claims against the City, Wray, Brady, GPD Officer Scott Sanders, and Greensboro City Council member Trudy Wade under 42 U.S.C. §§ 1981, 1983, and 1985(3), as well as North Carolina contract and tort law. (Case No. 1:09-CV-293.) On January 5, 2011, the court dismissed all claims against the City except Plaintiffs' breach-of-contract claim. See Alexander v. City of Greensboro, 762 F. Supp. 2d 764, 825 (M.D.N.C. 2011).

The City moved to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 7.) The motion was granted in part and denied in part: all Title VII claims by Plaintiffs Ahmed Blake, Larry Patterson Jr., Frank Young, Darryl Stevenson, and Mitchell Alston were dismissed, and all Title VII claims by the remaining thirty-five Plaintiffs were dismissed except (1) each remaining Plaintiff's hostile work environment claim, (2) Plaintiff Steven A. Evans' disparate treatment claim, and (3) Plaintiff Lawrence Alexander Jr.'s disparate treatment claim. See Alexander, 2011 WL 13857, at *23.

The City subsequently filed an Answer to the Amended Complaint (Doc. 21) and now moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (Doc. 29). This motion has been fully briefed (Docs. 30, 37, 38) and is ready for decision.

## II.  ANALYSIS

### A.  Standard for Rule 12(c) Motions

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is analyzed under the same standard as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). See Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405-06 (4th Cir. 2002). Thus, the court assumes the factual

allegations in the Amended Complaint to be true and draws all reasonable factual inferences in Plaintiffs' favor as the nonmoving parties. See id. at 406.

Unlike on a Rule 12(b)(6) motion, however, on a Rule 12(c) motion the court may consider the Answer as well. Rinaldi v. CCX, Inc., No. 3:05-CV-108, 2008 WL 2622971, at *2 n.3 (W.D.N.C. July 2, 2008). The factual allegations of the Answer "are taken as true only where and to the extent they have not been denied or do not conflict with the complaint." Jadoff v. Gleason, 140 F.R.D. 330, 331 (M.D.N.C. 1991). "For the purposes of this motion [the defendant] cannot rely on allegations of fact contained only in the answer, including affirmative defenses, which contradict [the] complaint," because "Plaintiffs were not required to reply to [the] answer, and all allegations in the answer are deemed denied." Id. at 332; see Fed. R. Civ. P. 8(b)(6) ("If a responsive pleading is not required, an allegation is considered denied or avoided.").

"The test applicable for judgment on the pleadings is whether or not, when viewed in the light most favorable to the party against whom the motion is made, genuine issues of material fact remain or whether the case can be decided as a matter of law." Smith v. McDonald, 562 F. Supp. 829, 842 (M.D.N.C. 1983), aff'd, 737 F.2d 427 (4th Cir. 1984), aff'd, 472 U.S. 479 (1985); accord Med-Trans Corp. v. Benton, 581 F. Supp.

4

2d 721, 728 (E.D.N.C. 2008); <u>Jadoff</u>, 140 F.R.D. at 331; 5C Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1368, at 223 (3d ed. 2004); <u>see</u> <u>id.</u> § 1368, at 248 ("A motion for judgment on the pleadings under Rule 12(c) may be granted only if all material issues can be resolved on the pleadings by the district court . . . .").

**B.  Plaintiffs' Rule 12(g)(2) Argument for Summary Denial**

Plaintiffs argue preliminarily that the City's motion should be summarily denied pursuant to Federal Rule of Civil Procedure 12(g)(2), which provides:

> Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

Fed. R. Civ. P. 12(g)(2). Plaintiffs argue that the City's Rule 12(c) motion falls squarely within this prohibition, because the defenses raised in the Rule 12(c) motion were allegedly available when the City filed its Rule 12(b)(6) motion to dismiss, but the City chose not to raise them at that time. The City responds that Rule 12(g)(2) does not apply to Rule 12(c) motions and that the arguments in the pending motion were not available to the City at the Rule 12(b)(6) stage.

As the City points out, Rule 12(g)(2) begins with the phrase "[e]xcept as provided in Rule 12(h)(2) or (3)." Rule 12(h)(2) provides in pertinent part:

> Failure to state a claim upon which relief can be
> granted . . . may be raised . . . by a motion under
> Rule 12(c) . . . .

Fed. R. Civ. P. 12(h)(2)(B). Thus, Rule 12(c) motions for judgment on the pleadings based upon failure to state a claim are explicitly exempted from the prohibition in Rule 12(g)(2).[2] Cf. Tatum v. R.J. Reynolds Tobacco Co., No. 1:02-CV-373, 2007 WL 1612580, at *6 (M.D.N.C. May 31, 2007) ("Taken together, Rules 12(g) and 12(h)(2) prohibit Defendants from filing a successive Rule 12(b)(6) motion *unless it is included in their answer or in a Rule 12(c) motion after pleadings are closed*." (emphasis added)).

The only case law cited by Plaintiffs in support of their argument is inapplicable, because it involves successive motions brought pursuant to *Rule 12(b)*. See Partington v. Am. Int'l Specialty Lines Ins. Co., No. 1:03-CV-1084, Doc. 15 at 1-2 (M.D.N.C. May 18, 2004); cf. Wright & Miller, supra, § 1384, at 479-80 ("[Rule 12(g)] contemplates the presentation of an omnibus *pre-answer motion* in which the defendant advances every available Rule 12 defense and objection he may have that is assertable by motion. . . . Any defense that is available at the time of the original motion, but is not included, may not be the basis of a second *pre-answer motion*." (emphases added)).

---

[2]  To the extent the City's pending motion also raises a question of subject matter jurisdiction (see infra note 5), it is exempted from the Rule 12(g)(2) prohibition pursuant to Rule 12(h)(3).

Therefore, Rule 12(g)(2) does not bar the City's Rule 12(c) motion, and it is unnecessary to determine whether the City's present arguments were available at the Rule 12(b)(6) stage. Consequently, the court will proceed to the merits of the City's motion. In so doing, however, the court will not reconsider issues that it addressed fully at the Rule 12(b)(6) stage.

### C. The City's Arguments for Dismissal

The City presents three arguments in support of its motion for judgment on the pleadings: (1) Eleven Plaintiffs did not satisfy the prerequisites for a Title VII suit, because they did not file a proper Charge of discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC" or "Commission"); (2) two of these Plaintiffs, even if they filed proper Charges, filed them outside the applicable 180-day limitations period; and (3) all thirty-five remaining Plaintiffs' claims should be dismissed under the doctrine of laches, because Plaintiffs were not diligent in pursuing their claims and the City was prejudiced as a result. Each argument will be examined in turn.

### 1. Whether the Eleven Plaintiffs Filed Charges of Discrimination

The City argues that eleven Plaintiffs did not file Charges of discrimination with the EEOC and thus failed to satisfy the

prerequisites for a Title VII action.[3]  These Plaintiffs respond
that the evidence presented by the City cannot be considered at
the Rule 12(c) stage and, alternatively, that the Intake
Questionnaires Plaintiffs submitted to the EEOC constituted
sufficient Charges of discrimination.

The City's argument for judgment on the pleadings relies
upon over 4,000 pages of documents that it obtained from the
EEOC pursuant to Freedom of Information Act requests and that
the City attached to its Answer.  (Doc. 21, Exs. A to II.)  The
City argues that these documents constitute the entire EEOC
files for all thirty-five Plaintiffs (minus certain internal
EEOC communications that are deliberative in nature, certain
personal information about third parties, and certain
settlement-related information) (see, e.g., Doc. 21 ¶ 45; Doc.
21, Ex. A at 2-4; Doc. 21, Ex. C at 2-4; Doc. 21, Ex. L-1 at 2-
5) and that these files do not contain any Charges of
discrimination for the eleven Plaintiffs at issue.  The City
contrasts this with the presence of "formal" Charges in the
files of the remaining twenty-four Plaintiffs.  (Compare Doc.
21, Exs. A to K (containing no "formal" Charges), with Doc. 21,
Exs. L to II (containing "formal" Charges).)  As a consequence,
the City argues, the Title VII claims of the eleven Plaintiffs

---

[3]   The eleven Plaintiffs at issue are Ernest Cuthbertson, Steven A.
Evans, George M. Little, Darrell McDonald, C.L. Melvin, Willie Parker,
William A. Phifer, Joseph Pryor, Norman Rankin, Calvin Stevens Jr.,
and Michael Wayland Wall.

should be dismissed for failure to file Charges of discrimination with the EEOC.  See generally Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009) ("Before a plaintiff may file suit under Title VII . . . he is required to file a charge of discrimination with the EEOC.").

It is doubtful whether, as a procedural matter, the court may draw the inference the City urges.  True, a court deciding a Rule 12(c) motion may consider documents attached to the Answer, see, e.g., Bradley v. Ramsey, 329 F. Supp. 2d 617, 622 (W.D.N.C. 2004), so long as they are central to the plaintiff's claim and of undisputed authenticity, see, e.g., Lefkoe v. Jos. A. Bank Clothiers, No. 06-CV-1892, 2008 WL 7275126, at *3-*5 (D. Md. May 13, 2008) (citing Horsley v. Feldt, 304 F.3d 1125, 1134-35 (11th Cir. 2002), for this holding).[4]

Here, however, the City's argument rests not upon the EEOC documents attached to the City's Answer but upon *what is missing*

---

[4]  See also, e.g., Colonial Trading, LLC v. Basset Furniture Indus., Inc., No. 5:09-CV-43, 2010 WL 5071174, at *2 (W.D.N.C. Dec. 7, 2010) (citing Horsley for this holding); Farmer v. Wilson Hous. Auth., 393 F. Supp. 2d 384, 386 (E.D.N.C. 2004) (same).  See generally Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (holding that on a Rule 12(b)(6) motion to dismiss, the court may consider documents attached to the motion if they are "integral to the complaint and authentic"); Horsley, 304 F.3d at 1134-35 (holding that these same requirements "must apply for Rule 12(c) purposes to documents attached to answers just as [they apply] for Rule 12(b)(6) purposes to documents attached to motions to dismiss," because "[o]therwise, the conversion clause of [Federal Rule of Civil Procedure 12(d)] would be too easily circumvented and disputed documents attached to an answer would have to be taken as true at the pleadings stage"); 5A Wright & Miller, supra, § 1327, at 439, 442 ("[L]engthy or numerous exhibits containing extraneous or evidentiary material should not be attached to the pleadings.").

from them, and Plaintiffs dispute whether these attachments "represent all of the information provided by these Plaintiffs to the EEOC in support of their charges" (Doc. 37 at 5-6). Thus, it is doubtful on this record whether the court may assume the completeness of these 4,000 pages pursuant to a motion for judgment on the pleadings. Cf. Jadoff, 140 F.R.D. at 332 ("[A]ll allegations in the answer are deemed denied [where no reply was required]."); Smith, 562 F. Supp. at 842 ("The test applicable for judgment on the pleadings is whether or not, when viewed in the light most favorable to the [nonmoving party], genuine issues of material fact remain or whether the case can be decided as a matter of law.").[5]

Even assuming the court may consider all 4,000 pages submitted by the City and draw the inference it urges, the eleven Plaintiffs contend that the City's motion should still be denied, because within the City's attachments are Intake Questionnaires these Plaintiffs submitted to the EEOC. The eleven Plaintiffs contend that their Intake Questionnaires

---

[5] To the extent the City implies that by failing to file Charges the eleven Plaintiffs have failed to exhaust their administrative remedies under Title VII, this may raise a question of subject matter jurisdiction, see Jones, 551 F.3d at 300, which would permit the court to consider all relevant evidence without converting the proceeding to one for summary judgment, see Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). However, the City's briefs do not explicitly advance such an argument.

constituted sufficient Charges of discrimination and thus satisfied the prerequisites of Title VII.[6]

Title VII requires an employee alleging discrimination to exhaust his administrative remedies prior to filing an action in federal court. See Jones, 551 F.3d at 300 ("[A] failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim."). The first step is the filing of a Charge of discrimination with the EEOC "by or on behalf of a person claiming to be aggrieved, or by a member of the Commission." 42 U.S.C. § 2000e-5(b). Upon receiving a Charge, the EEOC must provide notice of the Charge to the employer, investigate the validity of the claim, and, if the claim proves valid, attempt to remedy the discrimination through "informal methods of conference, conciliation, and persuasion." Id. If these efforts fail and the EEOC elects not to bring a lawsuit against the employer, the employee receives notice of his right to sue and has ninety days to file a Title VII action. Id. § 2000e-5(f)(1).

Title VII requires only that EEOC Charges "be in writing under oath or affirmation" and "contain such information and be in such form as the Commission requires." Id. § 2000e-5(b).

---

[6] Plaintiffs do not dispute the authenticity of these Intake Questionnaires and concede that they may be considered at this juncture, even if the City's remaining attachments may not. (See Doc. 37 at 5 & n.2.)

11

The EEOC's regulations require that a Charge "shall be in writing and signed and shall be verified." 29 C.F.R. § 1601.9. Moreover, a Charge should contain (1) the name, address, and telephone number of the employee; (2) the name and address of the employer; (3) a "clear and concise statement of the facts, including pertinent dates, constituting the alleged [discrimination]"; and (4) the approximate number of employees of the employer.[7] Id. § 1601.12(a)(1)-(4). Despite these specific requirements, however, "a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." Id. § 1601.12(b).

Here, the eleven Plaintiffs each filed an Intake Questionnaire with the EEOC between July 26, 2005, and May 5, 2006.[8] (See Doc. 21, Ex. A at 14-23; Doc. 21, Ex. B at 15-23;

---

[7] The Charge should also disclose whether proceedings have been commenced before a state or local agency charged with the enforcement of fair employment practice laws. 29 C.F.R. § 1601.12(a)(5). This requirement is only relevant in "deferral states," however, and North Carolina is a "deferral state" only in limited circumstances not applicable here. See Bratcher v. Pharm. Prod. Dev., Inc., 545 F. Supp. 2d 533, 539-43 (E.D.N.C. 2008).

[8] These Intake Questionnaires were filed noticeably earlier than the Charges of the remaining twenty-four Plaintiffs, the earliest of which were filed on May 10, 2006, and eighteen of which were not filed until on or after July 25, 2006. (See Doc. 21, Exs. L to II.) In its earlier Rule 12(b)(6) motion, the City challenged the timeliness of these eighteen Charges, but the court denied this aspect of the motion without prejudice because the facts necessary to the City's limitations argument did not clearly appear on the face of the Amended

Doc. 21, Ex. C at 14-22; Doc. 21, Ex. D at 14-21; Doc. 21, Ex. E at 15-23; Doc. 21, Ex. F at 14-22; Doc. 21, Ex. G at 15-23; Doc. 21, Ex. H at 14-22; Doc. 21, Ex. I at 18-27; Doc. 21, Ex. J at 14-23; Doc. 21, Ex. K at 7-15.)  Each Intake Questionnaire was in writing and contained a signed declaration "under the penalty of perjury that the information provided in this questionnaire is true and correct."  (See, e.g., Doc. 21, Ex. A at 23.) Moreover, each Intake Questionnaire contained the information required by 29 C.F.R. § 1601.12(a)(1)-(4).[9]  (See, e.g., Doc. 21, Ex. E at 15-17.)  Therefore, the Intake Questionnaires satisfied the explicit requirements for a Charge found in the applicable statute and regulations.

It is also apparent that the EEOC treated these eleven Intake Questionnaires as Charges, which is permissible, as Plaintiffs note, under Federal Express Corp. v. Holowecki, 552 U.S. 389 (2008).[10]  The EEOC assigned each of the eleven

---

Complaint or the Charges themselves.  See Alexander, 2011 WL 13857, at *8.

[9]  The Intake Questionnaire of Norman Rankin did not include the number of employees of the GPD (see Doc. 21, Ex. I at 19), but this is not essential according to 29 C.F.R. § 1601.12(b).

[10]  In Holowecki, the EEOC did not treat the relevant plaintiff's Intake Questionnaire as a Charge, give the plaintiff an EEOC Charge Number, provide the employer with notice of the Intake Questionnaire, or engage in any informal conciliation efforts.  See 552 U.S. at 400, 407; id. at 408 (Thomas, J., dissenting).  The plaintiff's later "formal" Charge was untimely, but the Supreme Court held that her Intake Questionnaire should be deemed her Charge for timeliness purposes, adopting and applying the EEOC's proposed rule that to be deemed a Charge, a filing "must be reasonably construed as a request

Plaintiffs an EEOC Charge Number and sent a "Notice of Charge of Discrimination" to the City in connection with each Plaintiff, stating that "a charge of employment discrimination has been filed against your organization" and indicating that the Charge alleged discrimination based on "Race."[11]  (See, e.g., Doc. 21, Ex. A at 12; see also, e.g., id. at 5.)  In each case, the EEOC made a determination that the Plaintiff's claim was sufficiently valid to merit conciliation efforts (see, e.g., id. at 7-8), provided notice when conciliation efforts were deemed to have failed (see, e.g., id. at 6), and subsequently referred the claim to the United States Department of Justice (see, e.g., id.).[12]  Plaintiffs allege that they all "received right-to-sue

_____

for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." Id. at 402 (majority opinion); see id. at 404, 406.  The Court expressed concern that requiring less of a Charge would force local EEOC offices to treat almost any information received from an employee as a Charge, triggering notice to the employer, conciliation efforts, etc., and potentially impairing the EEOC's ability to provide answers to mere informational requests and offer pre-Charge-filing counseling. Id. at 400-01.

[11]  Substantial time elapsed between Plaintiffs' filing of the Intake Questionnaires and the EEOC's notice to the City.  Ordinarily, the EEOC is required to provide an employer with notice of a Charge within ten days of the Charge's filing date. 42 U.S.C. § 2000e-5(b), (e)(1).  Delay by the EEOC in performing this statutory duty should not be held against Plaintiffs in this situation, however. See Edelman v. Lynchburg Coll., 300 F.3d 400, 404 (4th Cir. 2002) ("Once a valid charge has been filed, a simple failure by the EEOC to fulfill its statutory duties regarding the charge does not preclude a plaintiff's Title VII claim.").

[12]  If the employer is a "government, governmental agency, or political subdivision," the EEOC must give the United States Attorney General

14

letters from the United States Department of Justice 90 days or less before the institution of this lawsuit" (Doc. 4 ¶ 45), and the City has not challenged this allegation as to the eleven Plaintiffs.

Without addressing the merits of whether the eleven Plaintiffs' Intake Questionnaires can constitute Charges under Holowecki, the City contends that Plaintiffs are prohibited from making this argument because they neither alleged it in the Amended Complaint nor themselves produced evidence to support it. The City argues that permitting Plaintiffs to rely now upon the Intake Questionnaires, submitted by the City, would constitute an impermissible amendment of the Amended Complaint. Under the City's logic, each Plaintiff relying upon an Intake Questionnaire as his EEOC Charge was required to explicitly allege this fact in the Amended Complaint and is now barred from proceeding, even though the EEOC considered the Intake Questionnaires to be the Plaintiffs' Charges, the Title VII administrative process was fully exhausted, and the Intake Questionnaires are before the court. While it perhaps would have been more accurate for the eleven Plaintiffs to allege from the start that they relied upon Intake Questionnaires as their Charges, the City points to no statute, regulation, or rule

_____

the opportunity to elect whether to bring a lawsuit on behalf of the aggrieved employee.  42 U.S.C. § 2000e-5(f)(1).

requiring that they do so under the circumstances in this case, and the court declines to so hold.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Even if this matter is jurisdictional, Plaintiffs' Amended Complaint only needed to contain "a short and plain statement of the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a)(1). "[W]here '[n]either the complaint nor the amended complaint alleges' that the plaintiff has 'complied with [the] prerequisites [of Title VII],' the plaintiff has not 'properly invoked the court's jurisdiction under Title VII.'" Davis v. N.C. Dep't of Corr., 48 F.3d 134, 140 (4th Cir. 1995) (second alteration in original) (quoting United Black Firefighters of Norfolk v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979)). Here, Plaintiffs alleged that they complied with Title VII's prerequisites by filing timely Charges with the EEOC, receiving right-to-sue letters from the Department of Justice, and filing their Title VII action within ninety days of those letters. (See Doc. 4 ¶ 45.) It is unclear that the precise form of the Charges must also have been alleged, in light of the variety of forms Charges may take. See, e.g., Edelman v. Lynchburg Coll., 300 F.3d 400, 404-05 (4th Cir. 2002) (holding that a letter sent to the EEOC could constitute a valid Charge).

The City relies entirely upon two opinions: <u>Vaughn v. Wal-Mart</u>, No. 4:10-CV-031, 2010 WL 4608403 (W.D. Va. Nov. 12, 2010); and <u>Rivera v. Prince William Cnty. Sch. Bd.</u>, No. 1:09-CV-341, 2009 WL 2232746 (E.D. Va. July 22, 2009). Both cases are distinguishable, however, because in each case the plaintiff attempted to rely upon his Intake Questionnaire (which the EEOC had never viewed as a Charge) only after it became apparent that his "formal" EEOC Charge was clearly untimely.

In <u>Vaughn</u>, the plaintiff attached to his amended complaint a notice from the EEOC dismissing his Charge as untimely, thus indicating that it was the relevant Charge in the case. <u>See</u> Amended Complaint, Ex. 1, <u>Vaughn</u>, 2010 WL 4608403 (No. 4:10-CV-031). He first mentioned his earlier Intake Questionnaire in a one-page response brief to the defendant's motion to dismiss, asserting that the filing date of the Intake Questionnaire should save his Title VII action. <u>See</u> Response to Motion at 1, <u>Vaughn</u>, 2010 WL 4608403 (No. 4:10-CV-031). He failed to provide his Intake Questionnaire to the court, however, so there were no facts about the Intake Questionnaire in the pleadings or elsewhere in the record. The defendant attempted to obtain a copy of the Intake Questionnaire from the EEOC, but the agency no longer had a copy. <u>Vaughn</u>, 2010 WL 4608403, at *2. Finally, at a hearing, the plaintiff "[a]stonishingly . . . admitted . . . that he retained a copy of his intake questionnaire and had it

the whole time." Id. The court held that "[i]f a Plaintiff seeking to avail himself of *Holowecki* does not produce the intake questionnaire he claims was a charge, he has failed to carry his burden of showing timely filing." Id. at *4. The court then deferred to the EEOC's determination that the Intake Questionnaire had not constituted a Charge. Id.

Similarly, in Rivera the defendant moved to dismiss the plaintiff's Title VII action because her "formal" EEOC Charge was untimely. See Defendant Prince William County School Board's Memorandum in Support of Its Motion to Dismiss at 10-11, Rivera, 2009 WL 2232746 (No. 1:09-CV-341). The plaintiff mentioned her Intake Questionnaire for the first time in her opposition brief, although the EEOC had not considered it a Charge, and she argued that its filing date should save her claims. See Plaintiff's Opposition to Defendant Prince William County School Board's Motion to Dismiss at 4-5, Rivera, 2009 WL 2232746 (No. 1:09-CV-341). She did not provide a copy of the Intake Questionnaire, however, and her complaint contained no related allegations, so "facts regarding the filing of the Questionnaire [were] not before the Court." Rivera, 2009 WL 2232746, at *4. The court held that the plaintiff could not use her opposition brief to "amend her Complaint." Id.

The present situation is very different from Vaughn and Rivera. Here, Plaintiffs alleged that they filed Charges of

discrimination with the EEOC and subsequently received right-to-sue letters, thus alleging that the EEOC treated whatever they filed as Charges. (See Doc. 4 ¶ 45.) Unlike in Vaughn and Rivera, however, the Intake Questionnaires of the eleven Plaintiffs *are* before the court, which is considering them as part of the pleadings at the City's request. Plaintiffs merely seek to argue that *these same materials* do not contradict their allegation but rather confirm it. Moreover, Plaintiffs do not seek to "amend" their Amended Complaint to shift the identification of their Charges from admitted untimely Charges to earlier ones never recognized as such by the EEOC. Plaintiffs' present argument is thus wholly consistent with their allegation.[13]

Observing that the applicable statute and regulations were satisfied, that the EEOC determined the Intake Questionnaires to be valid Charges, that this determination was not unreasonable (and indeed not contested by the City), that the Intake Questionnaires served the purpose of Charges by triggering notice to the City and initiating the required conciliation process, and that there is no apparent prejudice to the City, the court finds that the eleven Plaintiffs at issue are deemed to have filed Charges of discrimination as required by Title

---

[13]    Even if repleading had been required, the court would have permitted it under these circumstances.

VII.[14]    Therefore, the City's motion for judgment on the pleadings based upon these Plaintiffs' alleged failure to file EEOC Charges will be denied.

## 2. Timeliness of EEOC Charges

The City argues that even if the eleven relevant Plaintiffs' Intake Questionnaires constituted proper Charges of discrimination, two of these Plaintiffs — Steven A. Evans ("Evans") and Willie Parker ("Parker") — did not file their Charges in a timely fashion.

Title VII requires a plaintiff to file his threshold Charge of discrimination with the EEOC within 180 days of the alleged discriminatory act.[15]    42 U.S.C. § 2000e-5(e)(1); EEOC v.

---

[14]  This result is not inconsistent with the court's earlier Memorandum Opinion and Order, in which the court declined to dismiss these Plaintiffs' claims based upon the City's arguments about the timeliness and scope of their Intake Questionnaires, noting that "the City has submitted only their EEOC Intake Questionnaires, not their EEOC charges." Alexander, 2011 WL 13857, at *9; see id. at *10. The timeliness and scope of the Intake Questionnaires were relevant only if the Intake Questionnaires constituted Plaintiffs' Charges, but not if they were merely one step toward the filing of later "formal" Charges.  It was unclear which of these situations was present, the Amended Complaint was open to both readings, and the parties' briefs did not clarify the matter.  See, e.g., id. at *9 ("The City has not argued that the Intake Questionnaire constituted Parker's EEOC charge . . . ."); id. at *10 ("The City does not argue that these Intake Questionnaires constituted the charges of these . . . Plaintiffs.").  Because all factual inferences had to be drawn in favor of Plaintiffs at the motion-to-dismiss stage, the court refused to dismiss their claims based upon documents whose relevance was in question.  Now, of course, the timeliness and scope of the Intake Questionnaires are open to challenge by the City.  See infra Part II.C.2.

[15]  The time period is 300 days in a "deferral state."  See 42 U.S.C. § 2000e-5(e)(1).  North Carolina is a "deferral state," however, only in limited circumstances not applicable here.

Commercial Office Prods. Co., 486 U.S. 107, 110 (1988).  Failure
to timely file an EEOC Charge bars the plaintiff's claim in
federal court, McCullough v. Branch Banking & Trust Co., 35 F.3d
127, 131 (4th Cir. 1994), and courts have strictly enforced this
requirement, Tangires v. Johns Hopkins Hosp., 79 F. Supp. 2d
587, 597 (D. Md. 2000), aff'd, 230 F.3d 1354 (4th Cir. 2000)
(per curiam) (unpublished table decision).  Even claims alleging
a continuous violation of Title VII must allege a discriminatory
act committed within the limitations period, Nat'l R.R.
Passenger Corp. v. Morgan, 536 U.S. 101, 117-18 (2002), and
"discrete discriminatory acts are not actionable if time barred,
even when they are related to acts alleged in timely filed
charges," id. at 113.

An untimely filed Charge is not a jurisdictional bar but
rather is "like a statute of limitations, . . . subject to
waiver, estoppel, and equitable tolling."  Zipes v. Trans World
Airlines, Inc., 455 U.S. 385, 393 (1982).  The Fourth Circuit
has held in the Rule 12(b)(6) context that "a motion to dismiss
. . . which tests the sufficiency of the complaint, generally
cannot reach the merits of an affirmative defense, such as the
defense that the plaintiff's claim is time-barred," unless "all
facts necessary to the affirmative defense 'clearly appear[] on
the face of the complaint.'"  Goodman v. Praxair, Inc., 494 F.3d
458, 464 (4th Cir. 2007) (en banc) (alteration in original)

(emphasis omitted) (quoting Richmond, Fredericksburg & Potomac R.R. Co. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993)). "Due to the identical standards employed, the court will reach an affirmative defense through a motion under Rule 12(c) in similarly rare circumstances, with the caveat that the court may look to the uncontested pleadings as a whole — and not simply plaintiff's complaint — in determining whether all facts necessary to deciding the issue clearly appear." McQuade v. Xerox Corp., No. 5:10-CV-149, 2011 WL 344091, at *3 (E.D.N.C. Feb. 1, 2011); see Demetry v. Lasko Prods., Inc., 284 F. App'x 14, 15-16 (4th Cir. 2008) (unpublished per curiam opinion) (applying the Goodman standard in the Rule 12(c) context;[16] Simpson v. Air Liquide Am., LP, No. 3:09-CV-172, 2009 WL 2171274, at *1-*2 (W.D.N.C. July 20, 2009) (same). As noted earlier, the City "cannot rely on allegations of fact contained only in the answer, including affirmative defenses, which contradict [the] complaint," because "Plaintiffs were not required to reply to [the] answer, and all allegations in the answer are deemed denied." Jadoff, 140 F.R.D. at 332.

The City's arguments as to the timeliness of Evans' and Parker's EEOC Charges will be considered in turn.

---

[16] Unpublished decisions are not precedential but are cited for their persuasive authority.

### a.    Steven A. Evans

Evans filed his Intake Questionnaire, deemed a Charge by the EEOC, on August 1, 2005.  (See Doc. 21, Ex. B at 23.)  He principally alleged in it that after he was selected to go to General Instructor School, certain GPD officers held a private meeting and decided to remove him from the school for racially discriminatory reasons.  (Id. at 16-18.)  The City points to an affidavit by Chris Walker, former commanding officer in charge of the Training Department of the GPD, that it submitted with its earlier Rule 12(b)(6) motion.  (Doc. 9.)  According to the affidavit, Evans attended and completed General Instructor School in October 2004.  (Id. at 1.)  The City argues that Evans' alleged removal from the school must have occurred prior to October 2004 and thus at least ten months before he filed his EEOC Charge, well outside the 180-day limitations period.  Evans responds that the court cannot rely at this stage upon the City's affidavit, which raises factual questions.

In considering this motion under Rule 12(c), the court looks to whether the facts supporting the City's limitations defense clearly appear on the face of the pleadings.  The City's affidavit is not part of the pleadings, and even if the passing reference to the affidavit in the City's Answer (see Doc. 21 ¶ 108) were construed as an incorporation, it would not be appropriate to consider the affidavit here, because it is not a

document central to Evans' claim.  See, e.g., Colonial Trading,
LLC v. Basset Furniture Indus., Inc., No. 5:09-CV-43, 2010 WL
5071174, at *2 (W.D.N.C. Dec. 7, 2010); Lefkoe, 2008 WL 7275126,
at *3-*5.  Moreover, "all allegations in the answer are deemed
denied," because Plaintiffs were not required to reply to the
Answer.  Jadoff, 140 F.R.D. at 332.  Therefore, it is not clear
on the face of the pleadings that Evans' Charge was untimely,
and the City's Rule 12(c) motion on this ground cannot be
granted.

Moreover, even if it could be determined at this stage that
Evans was last barred from General Instructor School prior to
October 2004, the court could not dismiss his Title VII action
because he has alleged other grounds for it that the City has
not disputed as to timeliness.  For example, the Amended
Complaint alleges that although Evans was the only black GPD
officer certified as a marksmanship instructor, Wray appointed
white officers, not Evans, as instructors at local community
colleges and/or the Greensboro Police Academy, and that had
Evans obtained one of these appointments, he would have been
compensated for his instruction.  (Doc. 4 ¶ 108.)  It is not
clear on the face of the pleadings that these appointments were
made more than 180 days before Evans filed his EEOC Charge.[17]

---

[17]  Although not explicitly mentioned in Evans' Charge, this failure-
to-appoint allegation is reasonably related to the Charge's

### b. Willie Parker

Parker filed his Intake Questionnaire, deemed a Charge by the EEOC, on May 5, 2006.[18]  (See Doc. 21, Ex. F at 22.)  In it he alleged that "for no apparent reason my picture was being shown to citizens inquiring about my involvement in illegal activity."  (Id. at 15.)  For example, the GPD allegedly showed pictures of Parker and a drug dealer to someone and asked whether Parker knew the drug dealer and hung out with him.  (Id. at 16.)  On the line of the Intake Questionnaire marked "Most recent date of alleged harm (that you believe was discrimination) to you," Parker wrote "Summer/04."  (Id. at 15.) The City argues that Parker's Charge was untimely, because it was filed almost two years after "Summer/04."  Parker responds that the scope of his Charge is broader than the specific dates mentioned in it.

In the Amended Complaint, Plaintiffs allege that Wray and Brady directed subordinate officers to gather pictures of black

---

allegations that "[the Training Staff] did not want me to teach" and "[a]ccording to some staff in the Training Staff I was lazy & only wanted to become an instructor was [sic] to get out of working." (Doc. 21, Ex. B at 17-18.)  See Jones, 551 F.3d at 300 ("[T]hose discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996))).

[18]  As noted above, this is earlier than the filing dates of any of the Charges filed by the twenty-four Plaintiffs who filed "formal" Charges.  See supra note 8.

GPD officers, including Plaintiffs, for line-up books and other visual aids that were sometimes collectively called the "Black Book." (See Doc. 4 ¶¶ 48-50.) These materials were allegedly shown to the general public and criminal suspects in an effort to implicate black GPD officers in wrongdoing. (Id.) Largely on the basis of these allegations and the alleged pervasiveness of rumors within the GPD about the "Black Book," the court held that Plaintiffs had plausibly stated hostile work environment claims. See Alexander, 2011 WL 13857, at *12-*14. The court also held that it was not clear on the face of the Amended Complaint when this alleged discrimination ended, but that it was plausible from the Amended Complaint's allegations that it lasted until early 2006. See id. at *8. Parker argues that his claim should not be dismissed because these allegations fall within the scope of his Charge and the Charge is timely as to them.

As applicable here, Title VII requires EEOC Charges to be filed "within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). The scope of a Title VII action is not strictly limited by the scope of the preceding administrative Charge of discrimination but encompasses "the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." Chisholm v. U.S. Postal Serv., 665

F.2d 482, 491 (4th Cir. 1981).  "[T]hose discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit."  Jones, 551 F.3d at 300 (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996)).

Here, the subject matter of Plaintiffs' hostile work environment claim clearly falls within the scope of Parker's Charge.  Both the claim and the Charge are based upon allegations that Parker's photograph was shown to criminals and suspects in an attempt to implicate him in wrongdoing.  These allegations are essentially the same and are thus "reasonably related" to each other.

The question is whether and to what extent the Chisholm principle applies to the determination of timeliness.[19]  Some courts have held a plaintiff to the dates in his Charge where discrete acts of discrimination were alleged.  See, e.g., Zubek v. City of Chicago, No. 04 C 5399, 2006 WL 1843396, at *1, *4 (N.D. Ill. July 5, 2006) (holding that the plaintiff, despite alleging in his complaint the discriminatory denial of twenty separate job applications, could pursue his Title VII claim only

---

[19]  The City explicitly renounces any argument that Parker's answer of "Summer/04" in his Charge placed his later-occurring allegations outside the Charge's scope and thus deprived the court of jurisdiction over them.  (Doc. 38 at 8.)

as to those denials falling within the dates in his EEOC Charge); cf. Fernando v. Rush-Presbyterian-St. Luke's Med. Ctr., 882 F. Supp. 119, 122-23 (N.D. Ill. 1995) (denying motion to dismiss where the plaintiff's allegations of racial discrimination (racial slurs and the effective denial of the opportunity to continue his medical residency) were reasonably related to the EEOC Charge's allegation of disparate treatment, but limiting the plaintiff's Title VII claim to the dates listed in the Charge).

The issue is narrower here, because the court considers this question only in the context of a hostile work environment claim, which is fundamentally different from claims of discrete discriminatory acts.[20]  That is, where a plaintiff's EEOC Charge alleges a hostile work environment over a specified time period — a period preceding the Charge filing date by over 180 days — but his complaint alleges "reasonably related" hostile work environment incidents occurring thereafter, must the lawsuit be dismissed on the ground that the Charge is untimely?  Parker urges that the answer is "no," although he cites no authority and does not flesh out his argument.  The City argues that scope and timeliness are very different issues and that the Charge's

---

[20]  On his Intake Questionnaire, Parker checked "yes" when asked whether he believed he was subjected to conduct that was "so intimidating, hostile, or offensive that it interfered with [his] job performance" (Doc. 21, Ex. F at 20), supporting a hostile work environment claim.

timeliness must be determined based upon the dates in the Charge alone. But the City, like Parker, cites no authority, even though it bears the burden of persuasion.

The court's independent research reveals at least one federal court opinion holding that a plaintiff's Title VII hostile work environment claim is not limited to the dates provided in the EEOC Charge. See Edwards v. Murphy-Brown, L.L.C., 760 F. Supp. 2d 607, 625-26 (E.D. Va. 2011) (holding, in the hostile work environment context, that discrimination occurring before the dates alleged in the EEOC Charge was within the scope of the Charge and could be alleged in the plaintiff's complaint); cf. Alston v. Balt. Gas & Electric Co., No. 07-CV-2237, 2008 WL 5428126, at *4 n.11 (D. Md. Dec. 31, 2008) (rejecting the argument that plaintiff's discrimination claims were limited by the earliest date stated in her EEOC Charge, where the applicable limitations period extended even further back).

The court is not persuaded that Parker's Title VII claim must be considered untimely because of the dates he stated in his Intake Questionnaire, which constituted his Charge. There are several reasons for this conclusion. First, it appears that Parker completed his Intake Questionnaire without the aid of counsel. Courts should be careful not to hold unrepresented lay persons in this context to too strict a standard because they

frequently do not appreciate the legal implications of how they articulate their grievances. See, e.g., Holowecki, 552 U.S. at 406 ("Documents filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies."); cf. id. at 402-03 ("[Title VII] sets up a remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process. . . . The system must be accessible to individuals who have no detailed knowledge of the relevant statutory mechanisms and agency processes." (citations omitted) (internal quotation marks omitted)).

Second, Parker's EEOC file, which the City urges the court to construe as part of the pleadings, demonstrates that the Commission during its investigation determined the dates of the alleged hostile work environment to extend beyond those noted by Parker (i.e., beyond "Summer/04"). The EEOC's "Notice of Charge of Discrimination" indicates that Parker alleged discrimination lasting into 2006, within 180 days of his Charge. (See Doc. 21, Ex. F at 12.) It is unclear whether the EEOC determined this date based upon facts disclosed in an Intake Interview with Parker (see id. at 14) or through some other method pursuant to its investigation. Ordinarily, the EEOC would have assisted

Parker in the drafting of a "formal" Charge after an Intake Interview was performed.[21] (See id.)

Third, the EEOC notified the City, through both the "Notice of Charge of Discrimination" and the EEOC's subsequent request for information from the City on "all sworn police officers for the period of 1/1/04 thru 1/31/06" (id. at 5), that the relevant period extended beyond 2004.[22] The EEOC then issued a determination that Parker's allegations had sufficient merit to justify conciliation efforts, specifically pointing to the "Black Book" allegations later incorporated into Plaintiffs' Amended Complaint. (Id. at 7-8.)

Fourth, Parker alleges a hostile work environment claim, which by its nature allows acts outside a limitations period to be considered pursuant to a "continuing violation" theory. See, e.g., Morgan, 536 U.S. at 105 ("[C]onsideration of the entire

---

[21] See generally Edelman v. Lynchburg Coll., 535 U.S. 106, 115 n.9 (2002) ("The general practice of EEOC staff members is to prepare a formal charge of discrimination for the complainant to review and to verify, once the allegations have been clarified.").

[22] Parker's situation is thus distinguishable from that in Tillbery v. Kent Island Yacht Club, Inc., No. 09-CV-2956, 2010 WL 2292499 (D. Md. June 4, 2010), in which the plaintiff's EEOC Charge, signed by the plaintiff while she was represented by counsel, contained a mistaken date, which had also been used in two earlier Intake Questionnaires. See id. at *2, *5. Because of this mistaken date, the EEOC dismissed the Charge as untimely and never conducted an investigation. Id. at *5-*6. The court held that the plaintiff had not exhausted her administrative remedies, because her EEOC submissions did not "alert[] the agency to the possibility that the alleged harassment was ongoing or occurred on a date other than [the mistaken one]." Id. at *6. As a result, "the EEOC was not given the chance to investigate [the plaintiff's] allegations, or to provide [the defendant] with sufficient notice of them." Id. at *6 n.6.

scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period."). Here, the allegations in the Amended Complaint plausibly provide the required act within the statutory time period.

In light of all these factors, the court cannot say it is clear on the face of the pleadings that Parker's EEOC Charge was untimely. Therefore, the City's Rule 12(c) motion on timeliness grounds will be denied without prejudice.

### 3. Defense of Laches

The City's final argument is that all Plaintiffs were not diligent in pursuing their hostile work environment claims. The City contends that it was prejudiced because it received notice of Plaintiffs' claims only belatedly and thus was deprived of the opportunity to remedy the alleged discrimination. The City argues that Plaintiffs' claims are barred by laches as a result. Plaintiffs respond that this defense is inappropriate at the Rule 12(c) stage because it involves a fact-bound inquiry.

"Employers have recourse when a plaintiff unreasonably delays filing a charge." Morgan, 536 U.S. at 121. One such remedy is the equitable defense of laches, "which bars a plaintiff from maintaining a suit if he unreasonably delays in

filing a suit and as a result harms the defendant." Id.  This

defense "requires proof of (1) lack of diligence by the party

against whom the defense is asserted, and (2) prejudice to the

party asserting the defense."  Id. at 121-22.  Such equitable

doctrines "allow [the courts] to honor Title VII's remedial

purpose without negating the particular purpose of the filing

requirement, to give prompt notice to the employer."  Id. at 121

(internal quotation marks omitted).  Laches is an affirmative

defense, however, see White v. Daniel, 909 F.2d 99, 102 (4th

Cir. 1990), so it may only be reached at the Rule 12(c) stage if

the facts necessary to deciding the issue clearly appear on the

face of the pleadings, see McQuade, 2011 WL 344091, at *3.

    The "City Legal Report" attached to the Amended Complaint

alleges that several black GPD officers met with the Interim

City Manager in August 2005 to discuss alleged racial

discrimination within the GPD.  (Doc. 4, Ex. A at 2.)  The City

Manager initiated an investigation that included interviews with

at least one dozen Plaintiffs.  (See id.)  The Amended Complaint

alleges, and the City's Answer admits, that the City hired Risk

Management Associates of Raleigh in November 2005 to conduct an

investigation of allegations of discrimination within the GPD.

(Doc. 4 ¶ 96; Doc. 21 ¶ 96.)  After this investigation, the City

accepted the resignations of Wray and Brady, according to the

Answer.  (See Doc. 21 ¶ 90.)  Thus, it is not clear from the

pleadings that the City lacked notice of Plaintiffs' allegations until May 2006 or later, as the City argues, and had no opportunity to address them earlier. Rather, the opposite appears true.

To the extent the City argues it was unaware of *each Plaintiff's specific* allegations, this does not clearly appear in the uncontested facts in the pleadings. Nor is it clear, absent additional facts, that Plaintiffs did not diligently pursue their claims, that any delay was unreasonable, or that any delay so prejudiced the City as to require that the claims be barred as a matter of equity.

The City relies heavily on Faragher v. City of Boca Raton, 524 U.S. 775 (1998), which held that an employer is vicariously liable for a hostile work environment "created by a supervisor with immediate (or successively higher) authority over the employee." Id. at 807. Faragher established an affirmative defense, however, where the employer establishes by a preponderance of the evidence that it "exercised reasonable care to prevent and correct promptly" any harassment and the employee "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."[23] Id. The City argues that Plaintiffs' alleged

---

[23] Indest v. Freeman Decorating, Inc., 164 F.3d 258 (5th Cir. 1999) (Jones, J.) (nonprecedential opinion for lack of concurrences), also

34

delay deprived it of the opportunity to address the alleged discrimination and thus perhaps jeopardized its ability to make use of the _Faragher_ affirmative defense. It is not clear from the pleadings, however, that the City has been deprived of a potential _Faragher_ defense by any of Plaintiffs' actions or omissions.[24] Therefore, the City's motion for judgment on the pleadings based on the affirmative defense of laches will be denied without prejudice to the City's right to raise the defense later upon development of a factual record.

## III. CONCLUSION

For the reasons set forth above, therefore,

IT IS ORDERED that Defendant The City of Greensboro's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (Doc. 29) is DENIED.

                                    /s/   Thomas D. Schroeder
                                 United States District Judge

July 13, 2011

---

relied upon by the City, merely articulates a variation on the _Faragher_ holding. See id. at 264-67.

[24] To the contrary, if the City's allegations are correct — namely, that Plaintiffs unduly delayed in pursuing their rights, depriving the City of notice of their alleged grievances, but that the City took prompt corrective action once it learned of the allegations — the City's potential _Faragher_ defense may actually be enhanced.